UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: | CASE NO. 08-21228 (ASD) |
| JAMES L. LUKASZEWSKI and AMY M. LUKASZEWSKI, | CHAPTER 13 |
| DEBTORS | RE: DOC. I.D. NOS. 37 & 64 |

APPEARANCES:

Edward P. Jurkiewicz, Esq.
Lawrence & Jurkiewicz LLC, 30 East Main Street
Avon, CT 06001
Counsel for Debtors

Patrick Crook, Esq.
10 Columbus Boulevard, 6th Floor
Hartford, CT 06106
Counsel for Chapter 13 Trustee

## MEMORANDUM OF DECISION AND ORDER ON TRUSTEE'S OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

ALBERT S. DABROWSKI, Chief United States Bankruptcy Judge

### I. INTRODUCTION

The Chapter 13 trustee (hereafter, the "Trustee") objects to confirmation of the Chapter 13 Plan filed by James L. Lukaszewski and Amy M. Lukaszewski (hereafter, the "Debtors") on grounds that it does not provide for payment of all of the Debtors' projected disposable income to unsecured creditors as required by Section 1325(b)(1)(B) of the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer

Protection Act of 2005 (hereafter, "BAPCPA"). At issue is whether the above-median Debtors, who must determine their projected disposable income in accordance with the "means test" of Section 707(b)(2), are entitled to a deduction for payments they do not intend to make on a debt which, as of the Petition Date, was secured, but which the Court subsequently determined to be an unsecured claim pursuant to Bankruptcy Code Section 506.

For the reasons set forth hereinafter, the Court concludes that the Debtors are not entitled to such a deduction, and, therefore, confirmation of the Plan must be denied.

## II.    JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(L).

## III.    BACKGROUND

Before the Court are the Debtor's Second Amended Plan (heretofore and hereafter, the "Plan"), Doc. I.D. No. 37, the Trustee's Objection to Confirmation (hereafter, the "Trustee's Objection"), Doc. I.D. No. 64, and related Memoranda of Law, Doc. I.D. Nos. 63 & 65. The facts of the matter are undisputed, the parties having filed, prior to presenting oral arguments to the Court on February 26, 2009, a Stipulation to Facts, Doc. I.D. No. 62, in accordance with which they stipulated to the following facts:

1.  On June 30, 2008 [heretofore and hereafter, the "Petition Date"] the Debtors, James L. Lukaszewski and Amy M. Lukaszewski, filed a petition seeking relief under chapter 13 (Doc. I.D. No. 1).

2.  On the Petition Date, the Debtors' residence was encumbered by a second mortgage to Homecomings Financial as servicer to GMAC Mortgage.

3.  The average monthly payment which the Debtors are contractually obligated to pay on the second mortgage is $809.52.

4.  The Debtors are above-median debtors within the meaning of Section 1325(b)(3).

5.  On October 7, 2008, the Debtors filed an Amended Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (hereafter, "Form 22C"[1]) (Doc. I.D. No. 40) for the purpose, *inter alia,* of calculating the amount necessary to be paid to unsecured creditors on a monthly basis.

6.  Line 47b of the Debtors' amended Form 22C claims a deduction for the Debtors' average monthly payment on their second mortgage in the amount of $809.52.

7.  Utilizing that deduction, line 59 of the Debtors' amended Form 22C shows monthly disposable income of $520.65.

8.  Also on October 7, 2008, the Debtors filed the Plan, which provides for a payment to unsecured creditors consistent with monthly disposable income of $520.65.

9.  The Plan does not propose that the Debtors will pay their contractual obligation on the second mortgage, during the pendency of the Plan.

10. On November 17, 2008, the Debtors filed a Motion To Determine Secured Status (Doc. I.D. No. 50), alleging that the second mortgage of Homecomings Financial/GMAC should be treated as wholly unsecured, pursuant to Section 506(a).

11. On December 11, 2008, this Court entered an Order (Doc. I.D. No. 57) which granted the Debtors' Motion To Determine Secured Status, found that GMAC Mortgage holds an allowed secured claim in the amount of $0.00 (zero dollars) and

---

[1] Form 22C is the official bankruptcy form, filed by a debtor with a Chapter 13 bankruptcy petition, setting forth a debtor's historical "current monthly income," the deductions for expenses in accordance with the applicable IRS standards, and certain other deductions (including those for payments on secured debts), all calculated as of the bankruptcy petition date.

3

an allowed unsecured claim in the amount of $84,596.02, voided GMAC's lien pursuant to Section 506(d), and provided that, in the event the Debtors' chapter 13 case is dismissed, such lien shall be reinstated, pursuant to Section 349(b), without further order of this Court.

12. The Trustee is objecting to the confirmation of the Plan, on the basis that it fails to propose payment of all of the Debtors' projected disposable income to unsecured creditors as required by Section 1325(b)(1)(B).

## IV. DISCUSSION

### A. *The Means Test Under BAPCPA*

One of the major changes effected by BAPCPA was the adoption of a "means test," codified in Section 707(b)(2), based upon a debtor's historical income and expenses determined under applicable IRS standards, to establish when a presumption would arise that a Chapter 7 bankruptcy filing constituted an abuse of that chapter. A related change was also made under Chapter 13, adopting the same means test standards, in Section 1325(b)(3), to determine the amount of monthly income an above-median Chapter 13 debtor must devote to payment of creditors.

Incorporating the means test criteria into Section 1325 required some additional modifications to the language thereof. Prior to BAPCPA, "disposable income" had been determined without deductions for payments on any debt, secured or unsecured; a debtor's projected disposable income was applied under the plan to make payments to both secured and unsecured creditors. Under BAPCPA, means test calculations are net of secured debt payments, see Section 707(b)(2)(A)(iii). Because BAPCPA defines an above-median debtor's disposable income by reference to the means test, deductions for secured debts also reduce a debtor's disposable income. In lieu of revising the means test

4

language to eliminate the deduction for payments on secured debt, BAPCPA amended Section 1325(b)(1)(B) to require that a debtor's projected disposable income be applied to make payments under the plan only to unsecured creditors.

The question before the Court is whether, in determining projected disposable income for purposes of confirmation of a Chapter 13 plan, the Debtors are entitled to deduct payments which they will not actually be making (hereafter, the "Hypothetical Payments") for a debt that was a secured debt as of the Petition Date. The Debtors cite In re Longo, 364 B.R. 161 (Bankr. D.Conn. 2007) (Weil, U.S.B.J.) (holding that a Chapter 7 debtor who, post-petition, surrenders underlying collateral is entitled to a deduction for Hypothetical Payments he will not actually be making on such a debt under the means test applied as of the petition date to determine whether a presumption of abuse arises under Section 707) and argue that the Court must employ a similar calculus in Chapter 13. The Trustee argues that, even if the Debtors would be entitled to deduct such Hypothetical Payments in a Chapter 7 case, Section 1325 requires a different terminus under Chapter 13.

### B. *Relevant Statutory Provisions*

If the Trustee or an unsecured creditor objects to confirmation of a Chapter 13 plan that proposes to pay less than 100% of an allowed unsecured claim, such plan may be confirmed only if "*as of the effective date of the plan* ... [it] provides that all of the debtor's *projected* disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors." Section 1325(b)(1) (emphasis added). The term "projected disposable income" is not defined in the Bankruptcy Code.

5

Section 1325(b)(2) defines "disposable income" as the debtor's "current monthly income" (as defined in Section 101(10A)) "less amounts reasonably necessary to be expended . . . for the maintenance or support of the debtor or a dependent." Section 1325(b)(3) further provides that, for a debtor whose income exceeds the applicable median, the deductions for "[a]mounts reasonably necessary to be expended . . . shall be determined in accordance with subparagraphs (A) and (B) of Section 707(b)(2)."

Section 707(b)(2)(A)(i) describes the "means test" for determining whether a presumption of abuse arises in a Chapter 7 case:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter [7], the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of –
> (I)  25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater; or
> (II) $10,950.

Subsection (ii) specifies the various expenses a debtor may deduct and the basis for each. Subsection (iii), at issue in this proceeding, states, in relevant part: "The debtor's average monthly payments on account of secured debts shall be calculated as . . . the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition." Section 707(b)(2)(A)(iii). Section 707(b)(2)(B) provides for rebuttal of the Chapter 7 presumption of abuse by a showing of special circumstances.

C.  **Statutory Construction**

"[W]e begin with the understanding that Congress 'says in a statute what it means

6

and means in a statute what it says there.'" Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6, 120 S.Ct. 1942, 1947 (2000) (*quoting* Connecticut Nat. Bank v. Germain, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)).

> Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and "the statutory scheme is coherent and consistent." United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 240, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); see also Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-254, 112 S.Ct. 1146, 1149-1150, 117 L.Ed.2d 391 (1992).
> The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole. Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 477, 112 S.Ct. 2589, 2594-2595, 120 L.Ed.2d 379 (1992); McCarthy v. Bronson, 500 U.S. 136, 139, 111 S.Ct. 1737, 1740, 114 L.Ed.2d 194 (1991).

Robinson v. Shell Oil Co., 519 U.S. 337, 342, 117 S.Ct. 843, 846 (1997).

### D.   *Analysis – Projected Disposable Income*

At the core of the present dispute is the meaning of undefined the term "projected disposable income," as it pertains to an above-median Chapter 13 debtor. Courts that have considered this question have generally taken either a "mechanical" approach or a "forward-looking" approach. Those adopting the mechanical approach have held that projected disposable income is equal to monthly disposable income, determined under the Chapter 7 means test as of the petition date, multiplied by the 60-month term of the plan. See, e.g. In re Willette, 395 B.R. 308 (Bankr. D.Vt. 2008); In re Burmeister, 378 B.R. 227 (Bankr. N.D.Ill. 2007). Courts adopting the forward-looking approach have generally held that the debtor's "projected disposable income" is presumed to be the amount so

calculated, but that such presumption may be rebutted by evidence of circumstances that, as of the plan effective date, either have already occurred or are reasonably certain to occur. See, e.g. In re Frederickson, 545 F.3d 652 (8th Cir. 2008); In re Thomas, 395 B.R. 914 (6th Cir. B.A.P. 2008).

Courts in the Second Circuit, as elsewhere, are divided as to which approach is appropriate and the U.S. Court of Appeals for the Second Circuit has, to date, not resolved the split. See, e.g. In re Willette, 395 B.R. 308 (Bankr. D.Vt. 2008) (mechanical approach); In re Rahman, 400 B.R. 362 (Bankr. E.D.N.Y. 2009) (forward-looking approach). Of the Circuit Courts of Appeal that have thus far considered this issue, four have adopted the forward-looking approach; only one has adopted the mechanical approach. See In re Lasowski, 575 F.3d 815 (8th Cir. 2009); In re Frederickson, 545 F.3d 652 (8th Cir. 2008); In re Turner, 574 F.3d 349 (7th Cir. 2009); In re Nowlin, 576 F.3d 258 (5th Cir. 2009); In re Lanning, 545 F.3d 1269 (10th Cir. 2008) (all adopting forward-looking approach); But see In re Kagenveama, 541 F.3d 868 (9th Cir. 2008) (adopting mechanical approach). For the reasons set forth hereinafter, this Court aligns itself with those Circuits which have adopted the forward-looking approach as that approach is consistent with both the plain language of the relevant sections of the Bankruptcy Code and the underlying purposes of Chapter 13.

The Debtors urge the Court to apply the holding of Longo, a Chapter 7 case, and determine that whether Chapter 13 Debtors are entitled to the deduction be based upon the facts, including the presence or absence of an underlying secured debt, in existence on the Petition Date. In holding that the Chapter 7 means test calculation is "intended to

8

be a 'snapshot' of the state of matters as of the petition date," the Longo court reasoned that "[s]uch a reading conforms to the general tenet in bankruptcy that circumstances are to be gauged from the petition date, with the Bankruptcy Code replete with examples where any deviation therefrom is made explicit." In re Longo, 364 B.R. at 165 n.8.

However, in Chapter 13, the plain language of Section 1325(b)(1), providing for a determination "as of the effective date of the plan[2]," provides just such an explicit exception. In accordance with the "basic principle of statutory construction that a specific statute . . . controls over a general provision," HCSC-Laundry v. United States, 450 U.S. 1, 6, 101 S.Ct. 836, 839, 67 L.Ed.2d 1 (1981), the Court construes the mandate of Section 1325(b)(3) to determine the deductions applicable to an above-median Chapter 13 debtor "in accordance with" Section 707(b)(2) to apply such criteria to circumstances as of the plan effective date, rather than the petition date.

While circumstances, including the existence of a secured debt, on the petition date may be relevant in determining a debtor's "disposable income" on that particular date, the requirements for cramdown of a Chapter 13 plan refer, not to petition date "disposable income," the amount reflected on Form 22C, but to the debtor's "*projected* disposable income" determined *"as of the effective date of the plan."* Section 1325(b)(1) (emphasis added); see also In re Thomas, 395 B.R. 914 (6th Cir. B.A.P. 2008). Although the Bankruptcy Code does not define "projected disposable income," "[w]hen terms used in a

---

[2] "The term 'effective date' is not defined in the Bankruptcy Code, but for purposes of Section 1325(b)(1), the most logical interpretation is the date of plan confirmation, as a Chapter 13 plan is not binding on the debtor and other interested parties until it is confirmed." *In re Lanning*, 545 F.3d at 1279 (citations and internal quotation marks omitted).

9

statute are undefined, we give them their ordinary meaning." Asgrow Seed Co. v. Winterboer, 513 U.S. 179, 187, 115 S.Ct. 788, 793 (1995). "The term 'projected,' not defined in the statute, means '[t]o calculate, estimate, or predict (something in the future), based on present data or trends.'" In re Nowlin, 576 F.3d at 263. Thus, the plain language of Section 1325(b)(1) requires the Debtors' projected disposable income as of the plan effective date to be the amount, determined under the criteria set forth in Section 707(b)(2)(A) applicable to the circumstances which, as of the plan effective date, are reasonably certain to occur over the plan commitment period.

Under this "forward looking" approach the calculations filed by a debtor on Form 22C remain in play as a debtor's circumstances on the plan effective date are often similar to those that existed on the petition date. However, where there is a meaningful change in a debtor's circumstances, the Form 22C calculus merely provides a starting point for determination of projected disposable income, as a debtor's "disposable income" on the petition date will not be the debtors *projected* disposable income on the plan's effective date, with the difference proportional to the degree of change. This interpretation corresponds and is entirely "compatible with the statutory language of Section 1325(b)(1)(B), the new definition of disposable income, and the use of the means test to standardize an above-median Chapter 13 debtor's expenses. . . ." In re Lanning, 545 F.3d at 1278.[3]

### V.   CONCLUSION

---

[3] For an extensive discussion of "projected disposable income" *see* Chelsey W. Tulis, Get Real: Reframing the Debate over How to Calculate Projected Disposable Income in §1325(b), 83 Am. Bankr. L. J. 345 (2009) (arguing, *inter alia,* "that courts should follow the "forward-looking approach as applied in . . . *Lanning*").

Section 1325(b) requires that payments to unsecured creditors under the above-median Chapter 13 Debtors' Plan equal or exceed the sum of the Debtors' anticipated monthly disposable income for each of the 60 months following the plan effective date and that such projection be based upon events which, on the Plan's effective date, are reasonably certain to occur. The Petition Date disposable income reflected on the Debtors' Form 22C creates a presumption as to the Debtors' projected disposable income. However, that presumption has been rebutted in the present proceeding by the existence of the Court's December 11, 2008 Order determining the subject debt to be wholly unsecured. See supra, Part III ¶11. Because such debt was not a secured debt as of the Plan's effective date, the Debtors are not entitled to deduct the contractual payments therefor (which they will not be making). Accordingly, payments to unsecured creditors under the Plan are insufficient to satisfy the confirmation requirements of Section 1325. In light of the above, the Trustee's Objection to confirmation of the Plan is **SUSTAINED,** and confirmation of the Plan is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 6, 2009                                         BY THE COURT

Albert S. Dabrowski
Chief United States Bankruptcy Judge

11